

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| JUSTIN WINTER & ASSOCIATES, LLC d/b/a Justin Winter Sothebys International Realty,<br>          Plaintiff,<br><br>vs.<br><br>DONALD H. MCIVER, and<br>JUDITH S. MCIVER,<br>          Defendants<br><br>DONALD H. MCIVER, AND<br>JUDITH S. MCIVER,<br><br>          Counterclaimants,<br><br>vs.<br><br>JUSTIN WINTER & ASSOCIATES, LLC d/b/a Justin Winter Sothebys International Realty, and JUSTIN WINTER,<br><br>          Counter Defendants. | § § § § § § § § § § § § § § § § § § § § § § CIVIL ACTION NO. 8:17-01620-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF AND COUNTER DEFENDANTS'
MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

## I.  INTRODUCTION

This is an action for breach of contract and related claims. Pending before the Court is

Plaintiff Justin Winter & Associates, LLC (JWA) and Counter Defendant Justin Winter's

(Winter) motion for partial judgment on the pleadings. Having carefully considered the motion,

the response, the reply, the record, and the applicable law, it is the judgment of the Court the motion will be granted.

## II. RELEVANT FACTUAL AND PROCEDURAL HISTORY

JWA is a real estate broker operating in Oconee County, South Carolina. Winter is the president and broker-in-charge of JWA. In October 2014, JWA entered into an Exclusive Right to Sell Listing Agreement (Listing Agreement) with Defendants and Counter Claimants Donald H. McIver and Judith S. McIver (the McIvers) to sell a property located at 311 Knollwood Drive in Salem, South Carolina (Knollwood). Under the Listing Agreement, JWA agreed to use its best efforts to secure a buyer ready, willing, and able to purchase Knollwood on terms acceptable to the McIvers; and the McIvers agreed to pay JWA a commission of five percent of the sales price for its services if JWA represented both the buyers and the McIvers. The commission was "earned, due and payable when an agreement to purchase . . . is signed by [the McIvers]." ECF No. 1-1 at 11. The Listing Agreement also provided: JWA "agrees to defer the commission until the closing date or extension thereof stated in the agreement . . . . Deferral is agreed to solely as an accommodation to [the McIvers] and such deferral shall in no way be construed as a waiver of the brokerage fee." *Id*. at 12. The Listing Agreement expired on October 10, 2015. *Id*. at 11. On October 12, 2015 Donald H. McIver (Mr. McIver) emailed Winter, asking to extend the Listing Agreement for an additional year "under the terms and conditions of the just expired listing." *Id*. at 16.

On July 26, 2016, buyer Rodney R. Smith (Smith) and the McIvers entered into a Designated Agency Agreement with JWA whereby Winter would represent the McIvers and JWA's agent Trip Agerton (Agerton) would represent Smith. Under the terms of the Designated

Agency Agreement, JWA was required, through Winter, to supervise Winter and Agerton, and was prohibited from taking action detrimental to the interests of Smith or the McIvers. The same day, the McIvers entered into a Purchase Agreement with Smith for Smith to buy Knollwood. Under the Purchase Agreement, Smith agreed to purchase Knollwood for a price of $1,080,000, payable through a combination of cash and financing, but Smith's obligation to purchase Knollwood was not contingent upon obtaining financing. The Purchase Agreement set September 9, 2016 as the closing date.

On September 2, 2016, Smith sent an email to Agerton, which Agerton forwarded to Winter. Winter then emailed Mr. McIver explaining Smith had "applied for a mortgage to take advantage of low interest rates, and the lender has been delayed in receiving an appraisal." ECF No. 6-5 at 1. The email noted, though Smith could purchase the Knollwood property by liquidating securities, Smith preferred to purchase the home with financing, and in any case, could not liquidate securities in time to close on September 9, 2016. Smith proposed postponing the closing to September 30, 2016, paying rent to the McIvers, and taking over utilities in the interim. Winter added:

> As we do not have any other buyers nor do we have a back up contract I strongly urge you to consent to the extension by signing and returning the attached Addendum. I wish to reassure you that I have no concerns whatsoever of [Smith's] intention to close, and I often see delays in closing when banks are involved.

*Id.* The same day, the McIvers signed a Purchase Agreement Addendum prepared by Agerton, which extended the closing date to September 30, 2016, and obligated Smith to pay rent and take over utilities and alarm service at Knollwood in the interim.

On September 22, 2016, Smith requested the closing date be delayed to October 10, 2016. Agerton prepared a second Addendum to the Purchase Agreement, which extended the closing date to October 10, 2016, and obligated Smith to pay rent, utilities, and homeowner's insurance in the interim, as well as reimburse the McIvers for October homeowner's association dues. The McIvers signed the second Addendum on September 27, 2016.

On October 10, 2016, Smith emailed Agerton indicating he would not be purchasing Knollwood. Agerton forwarded the email to Winter, who forwarded it to Mr. McIver. On October 27, 2016, Mr. McIver instructed Winter and JWA via email to lower the list price on Knollwood, make the listing active again, and extend the listing until the property sold.

In the meantime, on October 20, 2016, the McIvers filed a lawsuit against Smith for specific performance, breach of contract, and fraud in relation to the July 2016 Purchase Agreement. *McIver v. Smith*, Civil Action No.: 8:16-cv-03455-MGL, ECF No. 1 (D.S.C. Oct. 20, 2016). In May 2017, that lawsuit settled. As part of the settlement, Smith purchased Knollwood for $1,100,000, closing on May 11, 2017. After the closing, JWA received a check for $27,000 from the closing attorney.

On June 6, 2017, JWA filed the instant lawsuit against the McIvers in the Court of Common Pleas for Oconee County, South Carolina. ECF No. 1-1. JWA brought claims for: 1) breach of contract, 2) breach of contract accompanied by a fraudulent act, and 3) unjust enrichment. The McIvers removed the action to this Court on June 21, 2017. ECF No. 1. On July 11, 2017, the McIvers filed counterclaims against JWA for breach of contract, and against JWA and Winter for breach of fiduciary duty. ECF No. 6.

On October 24, 2017, JWA and Winter filed their motion for partial judgment on the pleadings seeking judgment as to JWA's claim for breach of contract and as to Defendants' counterclaims for breach of contract and breach of fiduciary duty. ECF No. 17. Defendants responded, ECF No. 18, and JWA and Winter replied, ECF No. 19. The Court, having been fully briefed on the relevant issues, is now prepared to discuss the merits of the motion.

**III.   STANDARD OF REVIEW**

The defense of failure to state a claim upon which relief can be granted, set forth under Fed. R. Civ. P. 12(b)(6), can also be made via a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002). Stated differently, a Rule 12(c) motion for judgment on the pleadings is subject to the same standard as a motion to dismiss made under Rule 12(b)(6). *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009).

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive the motion, a complaint must have "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in favor of the nonmoving party. *Burbach*, 278 F.3d at 406. Conclusory allegations pled in the complaint are undeserving of an assumption of truth

and should be accepted only to the extent "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## IV. DISCUSSION AND ANALYSIS

### A. Plaintiff's Breach of Contract Claim

To state a claim for breach of contract in South Carolina, Plaintiff must show: 1) a contract, 2) breach of the contract, and 3) damages stemming from the breach. *See S. Glass & Plastics Co., Inc. v. Kemper*, 732 S.E. 2d 205, 209 (S.C. Ct. App. 2012) (citing *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (1962)). JWA argues it is entitled to judgment on the pleadings on its breach of contract claim because, under the terms of the Listing Agreement, it earned a commission when the McIvers signed the July, 2016 Purchase Agreement with Smith, regardless of whether that sale was completed; but it received only part of the commission due. The Court agrees.

There is no dispute the McIvers and JWA entered into a Listing Agreement in October, 2014, and in October, 2015, that Listing Agreement was renewed for an additional year. The Listing Agreement was thus in effect in July 2016 when the McIvers and Smith signed the Purchase Agreement. The Listing Agreement explicitly provided JWA would use its best effort to find a buyer who was "ready, willing, and able" to purchase Knollwood on terms acceptable to the McIvers. ECF No. 1-1 at 11. The Listing Agreement also provided JWA's commission would be five percent of the gross sales price on Knollwood if JWA represented both the buyer and the McIvers, *id.* at 15, and the commission "shall be earned, due and payable when an agreement to purchase . . . is signed by [the McIvers]," *id.* at 11." As a convenience, the Listing Agreement allowed the McIvers to defer paying the commission until the Knollwood closing.

Further, there is no dispute Smith and the McIvers entered into a Designated Agency Agreement with JWA on July 26, 2016, whereby JWA would represent both Smith, through Agerton, and the McIvers, through Winter. The same day, the McIvers signed a Purchase Agreement on Knollwood for Smith to purchase Knollwood at a price of $1,080,000. As a result, under the terms of the Listing Agreement, as of July 26, 2016, JWA was entitled to a commission equal to five percent of the $1,080,000 gross sales price, or $54,000. But, the McIvers paid JWA only $27,000 out of the Knollwood sale proceeds.

The McIvers put forth two arguments to avoid judgment on the pleadings on JWA's breach of contract claim. As analyzed below, however, both arguments fail. The McIvers first aver JWA failed to produce a ready, willing, and able buyer, and thus failed to meet a condition precedent to their obligation to pay a commission. The Listing Agreement here required JWA to produce a ready, willing and able buyer who would purchase on terms acceptable to the McIvers. As a preliminary matter, the McIvers signed the Purchase Agreement, which indicates the terms on which Smith was willing to purchase Knollwood were acceptable to them. Second, to the extent the McIvers seek to argue Smith was not an able buyer because he required financing to close, the Purchase Agreement indicated Smith intended to pursue financing to purchase Knollwood, but did not make his purchase contingent on financing. Winter's email of September 2, 2016 indicated the same. Thus, Smith was a ready, willing, and able buyer when the McIvers signed the Purchase Agreement. This is further supported by the fact Smith ultimately purchased Knollwood.

Second, the McIvers argue there is a factual dispute as to whether there was a listing agreement in force when the Knollwood sale closed in May 2017. Assuming without deciding the McIvers are correct, JWA earned its commission under the Listing Agreement signed in

October, 2014, renewed in October, 2015, and which was in effect when the McIvers entered the Purchase Agreement in July, 2016. Under the terms of the Listing Agreement and South Carolina law, JWA's entitlement to commission was not dependent on Knollwood closing. *See Helms Realty, Inc. v. Gibson-Wall Co.*, 611 S.E.2d 485, 487 (S.C. 2005) ("In executing a listing agreement, a seller and a real-estate broker may agree to any condition precedent to the seller's obligation to pay a commission. . . . If the listing agreement is silent as to what triggers the broker's right to a commission, then the common law fills the gap. The default term is that the broker is entitled to a commission when it procures a sales contract that is both valid and enforceable by the seller, regardless whether the contract actually closes.") (citations omitted). For the above reasons, JWA is entitled to judgment on the pleadings on its breach of contract claim, and the Court will grant its motion on that claim.

> **B.** **McIvers' Breach of Contract Counterclaim**
>
> **1.** **Breach of Contract as to Listing Agreement**

JWA argues it is entitled to judgment on the pleadings on the McIvers' breach of contract counterclaim as to the Listing Agreement because the McIvers neglected to show: 1) JWA failed to use its best efforts to secure a sales contract on Knollwood on terms acceptable to the McIvers, 2) JWA knew or should have known Smith required financing to purchase Knollwood, and 3) JWA's purported breach of contract forced the McIvers to take Knollwood off the market during prime selling season. The McIvers aver their breach of contract counterclaim as to the Listing Agreement is supported because they trusted JWA to sell their home and act in their best interest, communicated to Winter they would accept a lower price on Knollwood in return for a sale with no contingencies, JWA and Winter knew or should have known Smith required financing to close but Winter neglected to question Smith's ability to close without financing; and on

September 2, 2016, Winter encouraged Mr. McIver to agree to extend the closing date and stated he had no concerns regarding Smith's ability to close. According to the McIvers, these facts lead to an inference JWA acted in its own interest, and failed to disclose material facts regarding Smith's need for financing.

Taking all facts in the light most favorable to the McIvers, JWA did not breach the Listing Agreement. As required by the Listing Agreement, JWA procured a ready, willing, and able buyer on terms acceptable to the McIvers as evidenced by the McIvers signing the Purchase Agreement. The Purchase Agreement contained few contingencies--and no finance contingency--as the McIvers wished. The McIvers have provided no support for the idea JWA was required to investigate whether Smith required financing, and JWA disclosed to the McIvers via both the Purchase Agreement and the September 2, 2016 email Smith was seeking financing. Finally, if the McIvers did not wish to accept or extend the Purchase Agreement, they had the option not to contract with Smith, and not to extend the closing date. For those reasons, the Court will grant JWA's motion for judgment on the pleadings as to the McIvers' counterclaim for breach of contract regarding the Listing Agreement.

### 2. Breach of Contract as to Designated Agency Agreement

JWA argues its motion should be granted as to the McIvers' counterclaim for breach of contract in relation to the Designated Agency Agreement because the McIvers failed to support their claim JWA failed to supervise Agerton. The McIvers aver their breach of contract counterclaim as to the Designated Agency Agreement is supported by their allegations the Agreement required JWA through Winter to supervise Winter and Agerton, Agerton was an inexperienced agent in need of supervision, Agerton prepared the two addenda to the Purchase Agreement the first of which Winter strongly urged Mr. McIver to accept, and JWA knew or

should have known before Winter urged Mr. McIver to accept the extension of the closing date Smith could not close without financing, but ignored that information in hopes of receiving a commission. According to the McIvers, those facts lead to an inference JWA breached the Designated Agency Agreement by inadequately supervising Agerton, and by acting against the interests of the McIvers and Smith.

As a preliminary matter, the McIvers provide no support for the idea JWA knew or should have known Smith needed financing to close on Knollwood. Though the Purchase Agreement noted Smith intended to use a combination of cash and financing to pay for Knollwood, the Purchase Agreement specifically indicated Smith's purchase was not contingent upon obtaining financing.

The Designated Agency Agreement explicitly required JWA via Winter to supervise Winter and Agerton, and prohibited JWA from taking action against the interests of Smith or the McIvers. However, even assuming Agerton-an inexperienced agent in need of supervision-prepared the addenda, and Winter encouraged Mr. McIver to accept the addenda and the resulting extension of the closing date, there is no indication JWA breached its contractual duties either to supervise Agerton and Winter, or not to act to the detriment of Smith and the McIvers. The McIvers wished to sell Knollwood via a clean contract, which is what they received from Smith, and Smith wished to purchase Knollwood. These are the objectives JWA was helping Smith and the McIvers accomplish. Further, Agerton prepared two addenda, and Winter encouraged the McIvers to extend closing, which was appropriate given there was evidently no back up contract or buyer for Knollwood, and Smith had not indicated he required financing to close. For those reasons, the Court will grant JWA's motion for judgment on the pleadings as to the McIvers' counterclaim for breach of contract regarding the Designated Agency Agreement.

### C. McIvers' Breach of Fiduciary Duty Counterclaim

To establish a claim for breach of fiduciary duty under South Carolina law, a plaintiff must show: 1) there was a fiduciary duty, 2) that duty was breached, and 3) damages resulted from the breach. *RFT Mgmt. Co., L.L.C. v. Tinsley & Adams L.L.P.*, 732 S.E.2d 166, 173 (S.C. 2012). JWA and Winter argue the McIvers' counterclaim for breach of fiduciary duty fails because their arguments related to Smith's intent to seek financing are without merit, the McIvers have neglected to show any duty to question Smith's need for financing, and the McIvers were on notice Smith was seeking financing. The McIvers claim JWA and Winter breached their fiduciary duty to the McIvers because they knew or should have known in July 2016 Smith required financing to close, and failed to disclose this information to the McIvers. The McIvers further aver the fact Smith was applying for a mortgage was not disclosed to them until September 2, 2016. Thus, the McIvers argue JWA and Winter breached their fiduciary duty to the McIvers by neglecting to disclose material facts regarding Smith's need for financing, and by acting in their own self-interest rather than in the McIvers' interest.

The McIvers' arguments fail. As noted above, the McIvers have failed to provide any basis for their argument JWA or Winter knew or should have known Smith required financing to close. Likewise, the McIvers have neglected to advance any support for the idea JWA or Winter owed them a duty to inquire into whether Smith required financing to close. Further, the July, 2016 Purchase Agreement explicitly noted Smith planned to purchase Knollwood through a combination of cash and financing, though the Agreement was not contingent upon Smith obtaining financing. Thus, the McIvers were on notice Smith planned to seek financing to purchase Knollwood. As a result, the McIvers are unable to show JWA or Winter breached any

fiduciary duty. On that basis, the Court will grant JWA and Winter's motion for judgment on the pleadings as to the McIvers' counterclaim for breach of fiduciary duty.

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of this Court JWA and Winter's motion for partial judgment on the pleadings is **GRANTED**.

**IT IS SO ORDERED**.

Signed this 12th day of December, 2017, in Columbia, South Carolina.

<u>s/ Mary Geiger Lewis</u>
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE